**CITY OF HARLINGEN, Texas, Timoteo Flores, and Matthew Charles Manning, Appellants,**

v.

**Rosa Mata VEGA, Appellee.**

No. 13-97-027-CV.

Court of Appeals of Texas, Corpus Christi.

May 22, 1997.

Rehearing Overruled July 10, 1997.

Roger W. Hughes, Charlie J. Cilfone, Adams & Graham, Harlingen, for Appellants.

Seferino I. Trevino, Jr., Harlingen, for Appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr. and RODRIGUEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This is an interlocutory appeal from the denial of a motion for summary judgment. By three points of error, appellants complain that the trial court erred by denying their motion for summary judgment and by considering appellee's summary judgment evidence over their objections. We affirm the trial court's order denying appellants' motion for summary judgment.

### Background

The parties agree on a limited number of facts. Following a minor hit-and-run accident in April 1995, Harlingen police officers Timoteo Flores and Matthew Charles Manning stopped Rosa Mata Vega on U.S. Highway 77. The officers subsequently arrested Vega for driving while intoxicated.

Almost every other fact surrounding the stop and arrest is disputed. Both officers contend that Vega was drunk, combative, and uncooperative. Vega claims that she did not fight but was forced into the back of the police car, face down on the floorboard, and unnecessarily struck in the back and head.

Vega sued the City of Harlingen and officers Flores and Manning. Flores and Manning were sued individually and in their official capacity as police officers for assault, battery, conspiracy, and negligence. Vega's

petition also alleged a 42 U.S.C. § 1983 claim against Flores, Manning, and the City for violating her Fourth, Fifth, and Fourteenth Amendment civil rights. Appellants moved for summary judgment on immunity grounds. Flores and Manning claimed that they were entitled to "qualified immunity" against Vega's civil rights claim and "official immunity" against her tort claims.[1] The City claimed governmental immunity under state law.

After considering appellants' motion for summary judgment, appellee's response, appellants' reply, and the summary judgment evidence presented, the trial court denied appellants' motion for summary judgment. The trial court found that material issues of fact needed to be decided by a jury.

### Jurisdiction

■ Vega contends that we do not have jurisdiction to hear this appeal because the denial of the summary judgment was based on the trial court's finding that material facts exist.[2] Appellants admit that this is an appeal from an interlocutory order, but argue that the order is appealable because the motion for summary judgment was based on the affirmative defenses of official and qualified immunity asserted by Flores and Manning and the assertion of governmental immunity by the City of Harlingen.

### A. Vega's Claims Against Flores and Manning

Under Texas procedure, appeals are allowed only from final orders or judgments. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992); *North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex.1966); *Cameron County v. Alvarado*, 900 S.W.2d 874, 878 (Tex.App.—Corpus Christi 1995, writ dism'd w.o.j.). Unless a statute specifi-cally authorizes an interlocutory appeal, Texas appellate courts have jurisdiction only over final judgments. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985) (orig. proceeding); *Aldridge*, 400 S.W.2d at 895; *Alvarado*, 900 S.W.2d at 878. Section 51.014 of the Civil Practice and Remedies Code specifically allows "a person" to appeal various interlocutory orders, including an order that "(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(5) (Vernon Supp.1997). The supreme court has held that section 51.014(5) provides that the denial of a summary judgment motion may be appealed if it "is *based on* an assertion of" official immunity. *City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex.1993) (per curiam) (emphasis in original); *City of Mission v. Ramirez*, 865 S.W.2d 579, 581–82 (Tex.App.—Corpus Christi 1993, no writ). We conclude that we have jurisdiction to review the appeal of Flores and Manning.

### B. Vega's Claims Against the City Under State Law

■ The City of Harlingen asserts that it enjoys sovereign immunity under the Texas Tort Claims Act against claims arising from "the failure to provide or the method of providing police or fire protection." TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(3) (Vernon Supp.1997). Under the Tort Claims Act, a governmental entity may bear liability for its employees' torts if, among other things, "the employee would be personally liable to the claimant according to Texas law...." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 1986). Conversely, if official immunity protects the employee from

---

1. Although Texas courts use the terms "qualified" and "official" immunity interchangeably, *see, e.g., Travis v. City of Mesquite*, 830 S.W.2d 94, 100 n. 2 (Tex.1992)(Cornyn, J. concurring), recent cases discussing immunity defenses against both state and federal claims use the terms separately to distinguish between the standards for federal (qualified) and state (official) immunity tests. *See, e.g., Emerson v. Borland*, 927 S.W.2d 709, 719, 721 (Tex.App.—Austin 1996, writ denied); *Rhodes v. Torres*, 901 S.W.2d 794, 797, 798 (Tex.App.—Houston [14th Dist.] 1995, no writ).

2. Appellee cites *Baulch v. Johns*, 70 F.3d 813 (5th Cir.1995) in support of this contention. *Baulch* concerned the application of the Federal Rules of Appellate Procedure to an interlocutory appeal from a federal district court to a federal appeals court. We conclude that *Baulch* does not apply.

liability, then the governmental entity's sovereign immunity remains intact. *Kilburn*, 849 S.W.2d at 812. *See, e.g., Carpenter v. Barner*, 797 S.W.2d 99, 102 (Tex.App.—Waco 1990, writ denied); *Wyse v. Department of Pub. Safety*, 733 S.W.2d 224, 227–28 (Tex. App.—Waco 1986, writ ref'd n.r.e.). To that extent, a sovereign immunity claim may be "based on" an individual's assertion of official immunity and falls within the scope of section 51.014(5). *Kilburn*, 849 S.W.2d at 812; *Ramirez*, 865 S.W.2d at 582. Therefore, we have jurisdiction to review the City's appeal concerning the sovereign immunity claim that is "based on" Flores' and Manning's assertion of official immunity.

### C. Vega's Claims Against the City Under Federal Law

■ In a federal civil rights action under section 1983, the U.S. Supreme Court has made it clear that neither a municipality's sovereign immunity nor "good faith" is recognized as a defense. *Owen v. City of Independence, Missouri*, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980); *Daniels v. Williams*, 474 U.S. 327, 333–35, 106 S.Ct. 662, 666–67, 88 L.Ed.2d 662 (1986). Furthermore, municipalities do not enjoy qualified immunity from section 1983 suits as a "person." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993). Finally, the political subunit of a state has no protection based on the qualified immunity of its officials or employees in a civil rights action as the doctrine of qualified immunity is applicable only to an individual's liability. *Alberti v. Sheriff of Harris County*, 978 F.2d 893, 895 (5th Cir. 1992), *cert. denied, Richards v. Alberti*, 509 U.S. 905, 113 S.Ct. 2996, 2996, 125 L.Ed.2d 690 (1993). Therefore, the City's defense of governmental immunity against Vega's section 1983 claims cannot be based on Flores' and Manning's affirmative defense of qualified immunity. Accordingly, the City's governmental claim does not fall within the scope of section 51.014(5), and we have no jurisdiction to review that portion of the City's appeal.

### Appellants' Objections to Vega's Summary Judgment Proof

■ By their third point of error, appellants contend that the trial court erred in considering the appellee's affidavit as summary judgment evidence despite their objections to it.

In response to appellants' motion for summary judgment, Vega asserted that her sworn affidavit constituted evidence of appellants' violation of her constitutional rights. Appellants objected to the trial court's consideration of this evidence on the ground that it contained legal conclusions that Vega was not qualified to reach. They further objected that Vega was not an expert and that the evidence she presented was not "clear, positive and direct [not] otherwise credible [nor] free from contradictions and inconsistencies." *See* TEX.R. CIV. P. 166a(c). Appellants did not obtain a written order overruling their objections to Vega's affidavit.

Appellants specifically object to Vega's use of the terms "excessive force" and "resisting arrest." Proper use of either term, appellants contend, requires knowledge of their legal constitution and no evidence establishes that Vega has either background or education to draw such legal conclusions. Appellants cite us to four cases to support their contention that Vega's affidavit is inadequate summary judgment proof.

In *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984), the husband submitted as summary judgment evidence an affidavit which stated only that the agreement at issue had been modified and presented no facts, such as the exact nature of the modification, which would have defeated the grant of summary judgment. The court held this to be no more than a legal conclusion, and that affidavits consisting only of conclusions are insufficient to raise an issue of fact. *Id.*

Carrozza's affidavit in *Texas Division–Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex.1994), contained only aversions of subjective belief; he asserted no facts that formed the basis of his beliefs. The court held that subjective beliefs or statements of knowledge without indication of the factual basis are no more than conclusions and are

not competent summary judgment evidence. *Id.* (citations omitted); see *also Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex.1996)(mere expressions of belief do not positively and unqualifiedly represent that the "facts" disclosed are true). Carrozza also did not deny or contradict the facts in support of the motion for summary judgment. *Carrozza,* 876 S.W.2d at 314.

In *Radio Station KSCS v. Jennings,* 750 S.W.2d 760, 761–62 (Tex.1988), even though the appellant's affidavit contained assertions of fact, it did not disclose the basis upon which appellant had personal knowledge of the facts asserted. *Id.* Rule 166a(e) provides that affidavits submitted in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.* (quoting Tex.R. Civ. P. 166a(e)). Because appellant evinced no personal knowledge of the facts it asserted, the court held the affidavit was inadequate summary judgment proof. *Id.*

The affidavit in the instant case is distinguishable from those at issue in the above cases. Vega's affidavit contains some legal conclusions, but it does not consist solely of conclusions. She attests to precise and graphic facts surrounding her arrest. She does not suggest that she merely "thinks" those facts lead to her injuries; she clearly states that officer Flores "forc[ed] both my arms behind me ... injuring my wrists and shoulders." A lay person is competent to testify about her own pain and suffering. *Ford v. Texas Dept. of Public Safety,* 590 S.W.2d 786, 787 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Coca Cola Bottling of Fort Worth v. McAlister,* 256 S.W.2d 654, 656 (Tex.Civ.App.—Fort Worth 1953, no writ); *Texas Motor Coaches, Inc. v. McKinney,* 186 S.W.2d 714, 716, 717 (Tex. Civ.App.—Dallas 1945, no writ). The facts she recites contradict the accounts given by the officers. The source of her knowledge is personal experience. We find these cases do not support appellants' contention that

Vega's summary judgment proof is inadequate.

Appellants finally cite us to *Ervin v. James,* 874 S.W.2d 713 (Tex.App.—Houston [14th Dist.] 1994, writ denied), which bears some factual similarity to the instant case. The facts surrounding the arrest were derived from the detailed affidavits of the deputies involved as the complainant's affidavit contained almost no factual detail from which to reconstruct the events and activities involved in her encounter with the deputies. *Id.* at 715. James was arrested on suspicion of intoxication and injured in the course of the arrest. *Id.* She subsequently brought a civil suit against the arresting deputies alleging assault and negligence. *Id.* With their motion for summary judgment, both officers attested that James attacked them and resisted arrest. *Id.* James' personal affidavit, filed as summary judgment proof, offered no alternative version of the facts to controvert the facts detailed by the deputies' summary judgment proof. *Id.* at 717. James' affidavit consisted of conclusory statements such as the following:

1) I was assaulted ... before I offered any resistance ... ;
2) Defendants ... used greater force than was necessary to effect any arrest ... ;
3) They used excessive force ... ; and
4) There was no need to use the force that they used. ...

*Id.* James offered no descriptive facts to refute the deputies' defense of qualified immunity. *Id.* She did not even name her alleged assailants. *Id.* In the absence of such, the affidavit was insufficient to raise a fact issue. *Id.*

In the instant case, both officers offer detailed descriptions of Vega's conduct but vague accounts of their own. Vega makes a few conclusory statements and a general denial to the officers' statements, but also attests to facts concerning the officers' conduct which they do not directly refute. Appellants cite us to no cases which state that an affidavit mingling both legal conclusions and statements of fact based on personal experience is inadequate summary judgment evidence nor do we find any. The Texas Supreme Court suggested in *Brownlee* that the

affidavit in question would have been acceptable, despite the legal conclusion, if it had provided relevant facts. *See Brownlee,* 665 S.W.2d at 112.

Appellants further assert that Vega's affidavit is inadequate because it reflects objective beliefs (*i.e.,* conclusions) that her actions were proper because she does not deny the acts Flores and Manning describe. Although appellant does not expressly deny the particular acts alleged, such as kicking and struggling, appellant states plainly "I was not fighting." There is no statutory definition of "fighting" and it is not a term exclusive to law or law enforcement. Absent a specific statutory definition, courts are instructed to give words their ordinary meaning. TEX. GOV'T CODE ANN. § 312.002 (Vernon 1988); *National Medical Enter., Inc. v. Godbey,* 924 S.W.2d 123, 141 (Tex.1996). The ordinary meaning of "fight" is to use physical force against someone or something. CAMBRIDGE INT'L DICT. OF ENGLISH 516 (1st ed.1995). Obviously, Vega's general statement that she was not fighting encompasses a specific denial of kicking or struggling.

Finally, appellants urge that it is improper to consider Vega's affidavit as she is a lay witness rather than an expert. The opinions and inferences of a lay witness are acceptable evidence if rationally based on the perception of the witness and helpful to the determination of a fact in issue. TEX.R. CIV. EVID. 701.

Although the conclusory statements must be excluded as evidence, the affidavit contains factual statements that are acceptable evidence and can be read apart from those excluded. We hold that the trial court did not err in considering Vega's affidavit as summary judgment proof. We overrule appellants' third point of error.

### Standard of Review

By their first and second points of error, appellants contend that the trial court erred in denying their motion for summary judgment based on qualified and official immunity grounds.

The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled his initial burden (1) to estab-lish as a matter of law that there remained no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action or (2) to establish his affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true. *Nixon,* 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.* Once the movant establishes an affirmative defense which would bar the suit as a matter of law, the non-movant must then produce summary judgment proof raising a fact issue in avoidance of the affirmative defense. *Gonzalez v. City of Harlingen,* 814 S.W.2d 109, 112 (Tex. App.—Corpus Christi 1991, writ denied).

### Flores' and Manning's Claims of Official Immunity Under State Law

■ Texas law grants government employees official immunity from suits arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *Garza v. Smith,* 860 S.W.2d 631, 633 (Tex.App.—Corpus Christi 1993, no writ); *Eakle v. Texas Dep't of Human Serv.,* 815 S.W.2d 869, 875 (Tex.App.—Austin 1991, writ denied); *Russell v. Texas Dep't of Human Resources,* 746 S.W.2d 510, 513 (Tex.App.—Texarkana 1988, writ denied). To establish the element of good faith appellants must prove that a reasonably prudent police officer could have believed that the force used was necessary. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 656 (Tex.1994); *Victory v. Bills,* 897 S.W.2d 506, 509 (Tex.App.—El Paso 1995, no writ).

■ An essential factor in determining whether a reasonable police officer could have believed the force used was necessary is whether Vega resisted arrest. The affidavits presented by both sides as summary judgment evidence are diametrically opposed on

this issue. The officers assert that Vega resisted arrest, although their accounts of the alleged resistance do not tally in all respects. Vega insists she did not fight or resist arrest.

Crucial facts concerning the force used are in question. After reviewing the affidavits of Flores and Manning, we find that the affidavits do not say what specific actions they took during the arrest. We also find significant discrepancies in their testimony.

Flores states that once the decision to arrest Vega was made, he and Manning each took hold of one of her arms. It was at that point that Vega began struggling to get free and avoid being handcuffed. Vega continued kicking, yelling, pulling, and pushing while being walked over to the patrol car. Once she arrived at the patrol car, she became rigid and would not enter the vehicle. According to Flores, a struggle then ensued and Vega's "upper body was placed in the vehicle but her legs were still outside."

Manning, however, reports no resistance on Vega's part after she was handcuffed and escorted to the patrol car. According to Manning, Vega voluntarily seated herself in the back seat in response to the officers' request. Manning makes no mention of any rigidity or struggle before Vega entered the vehicle.

Both officers agree that Vega kicked at the officers after she was seated in the patrol car. Manning states that, at one point, Vega laid back on the seat and kicked out. Flores does not say whether Vega was sitting up, lying down, or leaning back when she kicked at the officers. Flores concludes his account of the arrest with the following statement: "Ms. Vega's legs were finally placed inside the unit and the door shut." After Vega was in the patrol car, Flores noticed Vega's car keys hanging out of her back pocket. After they arrived at the police station, Flores took Vega by one arm and placed one of her feet on the ground. She then exited the vehicle under her own power.

Vega, on the other hand, gives a very different version of events and provides a detailed account of the officers' actions. Vega says that she did not fight with the officers and did not resist arrest. After being escorted to the patrol car, Vega says that an officer pushed her, face first, into the vehicle, causing her to strike her head on the frame. She was then pushed face down to the floorboard between the front and back seats. Her protests that she had recent gall bladder surgery were ignored. While on the floor, officer Flores "jumped on my back and hit me on my back with his elbow." At the jail, Vega did not leave the car of her own volition. Flores seized her by the loop of her pants and handcuffs and pulled her out "forcefully," injuring her wrists and shoulders.

Vega's account offers the only specific facts concerning the officers' conduct in effectuating the arrest. After reviewing the three affidavits of officer Flores, the two affidavits of officer Manning, and the affidavit of Harlingen Police Captain Joey Vasquez, we find a near complete absence of factual evidence concerning the officers' actions.[3] Officers Flores and Manning were both present throughout the arrest, yet there are unresolved discrepancies concerning whether Vega did or did not struggle while being escorted to the police car and whether she became rigid and refused to get in or sat down in obedience to an officer's command. We conclude that "good faith" is a material fact issue that must be decided by a fact finder.

After taking all evidence favorable to Vega as true, and indulging every inference and resolving all doubts in her favor, we conclude that officers Flores and Manning have not established, as a matter of law, that they acted in good faith and that a reasonable police officer could have believed the force they used was necessary. Accordingly, we hold that officers Flores and Manning have

3. Harlingen Police Captain Joey Vasquez offered his expert opinion on the officers' actions based on his review of their affidavits, "information supplied by Rosa Mata Vega," and a personal interview with Flores. Although he says that the officers' actions constituted "minimal" and "necessary" force, his affidavit does not eliminate the fundamental factual dispute between the version of events offered by Vega, Flores and Manning.

not established the affirmative defense of official immunity as a matter of law.

### The City's Claim of Sovereign Immunity Under State Law

■ Under the Tort Claims Act, a governmental entity may bear liability for its employees' torts if, among other things, "the employee would be personally liable to the claimant according to Texas law...." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 1986). Conversely, if official immunity protects the employee from liability, then the governmental entity's sovereign immunity remains intact. *Kilburn*, 849 S.W.2d at 812. To that extent, a sovereign immunity claim may be "based on" an individual's assertion of official immunity and falls within the scope of § 51.014(5). *Kilburn*, 849 S.W.2d at 812; *Ramirez*, 865 S.W.2d at 582.

The City's sovereign immunity claim is "based on" Flores' and Manning's assertion of official immunity. Because Flores and Manning have not established the affirmative defense of official immunity as a matter of law, we hold that the City has not established its affirmative defense of sovereign immunity.

### Flores' and Manning's Claims of

### Qualified Immunity Under Federal Law

■ The state law standard for analyzing the "good faith" element of official immunity is "derived substantially from the test that has emerged under federal immunity law for claims of qualified immunity in section 1983 cases." *City of Lancaster*, 883 S.W.2d at 656. The federal test remains distinct nonetheless and resolution of state law immunity issues does not resolve federal immunity issues under § 1983. *See Robinett v. Carlisle*, 928 S.W.2d 623, 625 (Tex.App.—Fort Worth 1996, writ denied). Claims brought under section 1983 asserting violation of Fourth Amendment rights by law officers' use of excessive force in making an arrest are analyzed under the "unreasonable seizure" standard. *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989); *City of Lancaster*, 883 S.W.2d at 659. This test requires consideration of the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871–72. To prevail, a plaintiff must show (1) a significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was (3) objectively unreasonable. *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir.1989). Flores and Manning focus their arguments on the objective reasonableness of their actions to establish their entitlement to qualified immunity. They repeat their assertions that Vega was resisting arrest and that they applied only minimal and necessary force. Although the officers describe Vega's conduct in allegedly resisting, they make only broad, vague references to their own.

The officers presented Captain Vasquez's expert opinion that Flores and Manning acted reasonably. However, Vasquez does not state on what facts he based his expert opinion.

Only Vega provides specific facts concerning the force used by the officers. Because Vega was the non-movant, we must accept all evidence favorable to her as true and indulge all reasonable inferences and resolve all doubts in her favor. *Nixon*, 690 S.W.2d at 549. If Vega was not resisting arrest, the actions of the officers that she describes could be considered objectively unreasonable. We conclude that Flores and Manning have not established that their actions were objectively reasonable. Accordingly, we hold that Flores and Manning have not proved that they are entitled to qualified immunity. We overrule appellants' first and second points of error.

We affirm the trial court's order denying appellants' motion for summary judgment.