TEXAS DEPARTMENT OF PUBLIC
SAFETY, Quincy Campbell, and
Johnnie Davis, Appellants,

v.

Angel F. PEREZ and Melba
R. Perez, Appellees.

No. 14–94–00055–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 3, 1995.

Rehearing Overruled Sept. 7, 1995.

manner that makes recovery of the property by the owner unlikely ...

696

Karen D. Matlock, Austin, for appellants.

Robert K. Schaffer, Houston, for appellees.

Before ANDERSON, HUDSON and DRAUGHN (Sitting by assignment), JJ.

## OPINION

ANDERSON, Justice.

This is an interlocutory appeal originating from the denial of a motion for summary judgment filed by appellants, Texas Department of Public Safety and Troopers Quincy Campbell and Johnnie Davis. The chief issues before this court are whether appellants are entitled to official and sovereign immunity. We conclude they are. We reverse and render judgment that appellees Angel and Melba Perez take nothing.

### Background Facts

We will review the facts in the light most favorable to Angel and Melba Perez, the non-movants. On or about November 18, 1990, at approximately 11:45 p.m., Angel Perez was driving on Veterans Memorial Road in Harris County, Texas. He had picked up his wife, Melba, from work, and the couple was returning home. Angel and Melba were stopped by Troopers Quincy Campbell and Johnnie Davis because his vehicle registration tags had expired. The troopers were employed by the Texas Department of Public Safety ("DPS"). One of the troopers asked Mr. Perez to step to the rear of the car and produce his driver's license. Mr. Perez attempted to locate his license in his wallet but was unable to do so. Mr. Perez stated the license might be in his glove box and tried to return to the car to look for the license. There was, however, some miscommunication between the troopers and Mr. Perez. The troopers refused to let him go back to the car. Mrs. Perez left the car and began speaking loudly to the officers and telling them Mr. Perez suffered from heart and back problems. She admits she raised her voice and shook her finger at them. At some point, Mr. Perez was forcibly detained and handcuffed. Mrs. Perez searched the glove box where she found the license. The troopers then determined there were no outstanding warrants on Mr. Perez. One of the

troopers unlocked the handcuffs. Mr. Perez alleges the trooper grabbed the handcuffs, and pulled them up in a very forceful manner to unlock them. Mr. Perez contends this caused the handcuffs to tighten and resulted in severe pain to his wrists, back and neck. Mr. Perez was given a citation for expired vehicle registration. The entire stop took about ten minutes. Mr. Perez was admitted later that night to Houston Northwest Medical Hospital.

## Interlocutory Appeals

Generally, the denial of a motion for summary judgment is interlocutory and cannot be appealed. *Schlipf v. Exxon Corp.*, 644 S.W.2d 453, 454 (Tex.1982). However, appellants brought this appeal pursuant to section 51.014(5) of the Texas Civil Practice and Remedies Code. That section allows officers or employees of the state or its political subdivision to appeal the denial of a motion for summary judgment based on an assertion of immunity. TEX.CIV.PRAC. & REM. CODE ANN. § 51.014(5) (Vernon Supp.1995). Because of the limited appellate jurisdiction of this appeal, we will address only appellants' immunity defenses.

## Standard of Review

In their first and second points of error, appellants assert the trial court erred by denying their motion for summary judgment based on official and sovereign immunity. Specifically, they argue they conclusively proved all the essential elements of their immunity defenses, and there were no genuine issues of material fact.

The movant for summary judgment has the burden of showing there is no genuine issue of material fact and he is entitled to judgment as a matter of law. To decide whether there is a disputed material fact issue which precludes summary judgment, evidence favorable to the non-movant will be taken as true. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985).

A properly pleaded affirmative defense, supported by uncontroverted summary judgment evidence, may serve as the basis for a summary judgment. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991). To be entitled to summary judgment on the affirmative defense of official and sovereign immunity, appellants have the burden to establish all the essential elements of those defenses as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–311 (Tex.1984); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979).

## Official Immunity

In this opinion we will first address the immunity of the officers, and then turn to the issue of the liability of their employer because if the officers are immune from liability, then the employer remains immune as well. *City of Houston v. Newsom*, 858 S.W.2d 14, 19 (Tex.App.—Houston [14th Dist.] 1993, no writ). To prove they were immune from suit, Troopers Campbell and Davis were required to present summary judgment evidence which conclusively demonstrated the acts or omissions Angel and Melba Perez complain of were (1) discretionary, (2) performed in good faith, and (3) within the scope of their official duties. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (1994); *Albright v. Texas Department of Human Resources*, 859 S.W.2d 575, 579 (Tex. App.—Houston [14th Dist.] 1993, no writ). This immunity is based on sound public policy which encourages officers to perform their duties without fear of personal liability for negligent or improper performance. *See Chapman v. Gonzales*, 824 S.W.2d 685, 687 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

## Discretionary Acts

The test to determine whether an official's act is discretionary focuses on whether the officer is performing a discretionary function, not on whether the officer has discretion to do an allegedly wrongful act when discharging that function. *Chambers*, 883 S.W.2d at 653. Discretionary actions are those which require personal deliberation, decision, and judgment. In contrast, minis-

terial actions require obedience to orders or the performance of a duty as to which the actor has no choice. *Id.* at 654; *Wyse v. Department of Public Safety*, 733 S.W.2d 224, 227 (Tex.App.—Waco 1987, writ ref'd n.r.e.).

 Angel and Melba Perez complain of conduct which took place during a traffic stop and arrest. The stop occurred near midnight. Mr. Perez was unable to produce his driver's license. Mr. Perez attempted to return to his car to look for the license in the glove box. Mrs. Perez interfered with Trooper Campbell's questioning of Angel Perez; she shook her finger at the trooper and raised her voice.

A police officer has limited information at his disposal during a traffic stop. It is paramount that a police officer at all times retain control over a traffic stop, particularly at night; a prudent officer must constantly be on guard. When an officer loses control, the risk of harm to himself or the public is greatly increased. And, when an officer observes what he perceives to be a situation which may pose a risk to his or the public's security, he must decide whether or not to use some degree of force to avoid possible escalation of the event into something more serious. This is often a split-second decision in which the officer must evaluate the totality of the circumstances, including the number of potential suspects, emotional state of the suspects, time of day, traffic hazards, location, and suspicious conduct, attitude or activity. Any hesitation or wrong decision due to fear of liability may result in tragedy.

 Consequently, a police officer is given wide discretion to decide what actions to take when he makes a traffic stop. Commander Albert Rodriguez of the DPS' Training Academy testified that if an officer has any doubts about the situation he should not permit a motorist to return to his vehicle because the motorist could drive away, run away, escalate the situation or even retrieve a weapon. The appellants aptly point out that a police officer does not know whether he will encounter a serial killer or a preacher, and, even when the motorist claims to be a saint, the officer still does not know wheth-er the individual's assertions are trustworthy or not.

The situation in this case deteriorated due to miscommunication and a language barrier between the troopers and the Perez's. Mr. Perez knew he was going back to his car to look for his license. The troopers, however, had no way of knowing why Mr. Perez appeared unwilling to respond to their requests that he produce his license, or why he was attempting to return to his vehicle when they told him not to. Furthermore, Mrs. Perez was verbally harassing the troopers for restraining her husband.

Handcuffs were a viable option to maintain control of the situation. Trooper Campbell testified he handcuffed Mr. Perez for safety reasons and in accordance with his training and DPS policy. Trooper Davis testified he witnessed Trooper Campbell handcuff Mr. Perez and Campbell did not use any unnecessary force. Finally, Commander Rodriguez averred that the handcuffs were appropriate under the circumstances and the force used was justified.

We agree with appellants. The troopers' decision to restrain and handcuff Mr. Perez to prevent escalation of the situation, for their security and the security of others, called for personal deliberation, decision, and judgment. Thus, that decision was discretionary.

### Good Faith

 To establish good faith, the troopers' summary judgment proof must have shown a reasonable and prudent police officer could have believed his conduct was lawful in light of clearly established law and the information possessed by him at the time he made his decision to restrain and handcuff Mr. Perez. *See Chambers*, 883 S.W.2d at 656. The "could have believed" aspect of this test means that to be entitled to summary judgment, the troopers must prove a reasonably prudent officer might have believed the appropriate course of action was to restrain and handcuff Mr. Perez. They do not have to prove it would have been unreasonable not to restrain and handcuff Mr. Perez, or that all other reasonably prudent police officers

would have restrained and handcuffed Mr. Perez.

Commander Rodriguez's affidavit clearly states:

> The procedures used by both Trooper Campbell and Trooper Davis in handling the situation created by Mr. and Mrs. Perez are accepted and recognized throughout the law enforcement community as proper police procedure.

The affidavit conclusively established a reasonably prudent police officer could have believed the appropriate action was to restrain and handcuff Mr. Perez.

■■■■ Moreover, a peace officer may arrest an offender for any offense committed within his view. TEX.CODE CRIM.PROC.ANN. art. 14.01(b) (Vernon 1977).[1] It is an offense to drive with an expired registration sticker. TEX.REV.CIV.STAT.ANN. art. 6675a–3e, § 5(a) (Vernon Supp.1995). Mr. Perez's affidavit establishes he was stopped for driving with expired vehicle registration tags. Thus, at all times during the traffic stop both officers had the authority to arrest Mr. Perez. We hold the handcuffing of Perez amounted to an arrest; the officers had the power to effect an arrest and any reasonable police officer in the same circumstances could have arrested Mr. Perez. Therefore, both officers acted in good faith as a matter of law.

To refute the troopers' summary judgment proof of good faith, the Perez's were required to submit proof that no reasonable police officer in the troopers' position could have thought the facts were such that they justified restraining and handcuffing Mr. Perez. Under the facts before this Court, we hold Angel and Melba Perez cannot meet their burden of proof for the reason stated above: both officers possessed statutory authority to effect an arrest of Mr. Perez.

### Scope of Authority

■■■■ Finally, in order to prove their entitlement to qualified, or official immunity, the troopers must demonstrate that they were acting within the scope of their authority. An official acts within the scope of his authority if he is discharging duties generally assigned to him. We hold the troopers were acting within the scope of their authority. They were on patrol, observed a traffic violation (expired vehicle registration), stopped the motorist (Mr. Perez), requested Mr. Perez to produce his license, and proceeded to place Mr. Perez under arrest when they began to lose control of the situation. We sustain appellants' first point of error.

### Sovereign Immunity

■■■■ A governmental unit, which includes the DPS, is not liable for the acts or conduct of its officers or employees unless its immunity is waived by the Texas Tort Claims Act. *See Chambers*, 883 S.W.2d at 658.

■■■■ The Texas Tort Claims Act provides a waiver of sovereign immunity and permits a state governmental unit to be held liable for "... (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986). As a matter of law, a governmental unit cannot be held liable under section 101.021(2) based on respondeat superior when the employee of the governmental unit enjoys official immunity. *DeWitt v. Harris County*, 904 S.W.2d 650 (1995).[2] We sustain appellants' second point of error.

Because we find points one and two dispositive of the outcome of this appeal, we decline to address the third and fourth points. We find appellants' established their right to summary judgment as a matter of law based

---

1. An arrest occurs when a person's liberty of movement is restricted or restrained. *Amores v. State*, 816 S.W.2d 407 (Tex.Crim.App.1991). This includes handcuffing.

2. Where the issue is whether a governmental entity has respondeat superior liability under sec-

tion 101.021(2) of the Texas Tort Claims Act for the negligence of its employee, "It would serve no legislative purpose to declare a waiver of sovereign immunity when the basis of liability is respondeat superior and the acts of the employee

on their affirmative defenses of official and governmental immunity. The trial court erred in denying appellants' motion for summary judgment. Accordingly, we reverse the decision of the district court and render judgment that appellees Angel Perez and Melba Perez take nothing.

---

are covered by official immunity." 904 S.W.2d at 654.