TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00273-CV









Mark T. Holtzapple, Richard R. Davison, Bruce E. Dale and Texas 
A&M University System, Appellants


v.



AFEX Corporation, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 92-06726, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING





 This is an interlocutory appeal from a denial of summary judgment on a claim of official
immunity made by three professors employed by the Texas A & M University System ("TAMUS"). See
Tex. Civ. Prac. & Rem Code Ann. § 51.014(5) (West 1997). AFEX Corporation ("AFEX"), appellee,
sued professors Richard Davison, Mark Holtzapple, and Bruce Dale, individually and in their official
capacities, as well as TAMUS, for breach of contract, misappropriation of trade secrets, and deprivation
of intellectual property without due process of law. The professors moved for summary judgment based
on the affirmative defense of official immunity. The trial court denied their motion as to the breach of
contract and misappropriation of trade secrets causes of action. In a single point of error, the professors
contend the trial court erred in denying their motion. (1) We will affirm the judgment of the trial court.


FACTUAL AND PROCEDURAL BACKGROUND


 Ernest Stuart, the president of AFEX and a private citizen with a personal interest in the
production of alcohol fuels, collaborated with Davison and Holtzapple on efforts to process lignocellulose
biomass, e.g., grasses, hay, and alfalfa, into useful products such as ethanol fuel. In January 1988, the three
men formed the AFEX Corporation for the purpose of marketing a procedure invented by Professor Dale,
then a researcher at Colorado State University, to process biomass. A few years earlier, Dale had invented
a pretreatment process using liquid ammonia to break down the biomass and process the cellulose so that
the sugars contained within would be available for further processing. He called his invention "ammonia
freeze explosion" or "afex." Dale had sought and received patents on his work and had assigned the
patents to the Colorado State University Research Foundation ("CSURF"). Holtzapple and Davison
performed experiments applying the afex process and determined that the "freezing" part of the process
was ineffective. Stuart subsequently changed the name of the process to "ammonia fiber explosion." 
Following continued experimentation, Holtzapple and Davison discontinued their association with AFEX
and assigned their rights and interests in the afex process to Stuart.

 In contemplation of university research being conducted by the professors, the parties, with
the exception of Dale, entered into an agreement on March 16, 1992. As parties to the agreement,
TAMUS, CSURF, Holtzapple, and Davison agreed not to reveal confidential information about "AFEX
Technologies." Subsequently, Holtzapple and Davison conducted research in the area of breaking down
biomass utilizing lime in the pretreatment process rather than ammonia. In the performance of their
research they gave assignments to graduate students and published and presented papers on the lime
treatment process. Ultimately, Holtzapple and Davison filed a patent application for the lime treatment
process.

 In August 1988 Dale joined the chemical engineering department at Texas A & M. He
continued to perform research for AFEX on a pretreatment process utilizing corn fiber until July 1992. In
August 1994, without the prior knowledge or consent of AFEX, Dale applied for and ultimately received
a federal grant from the United States Department of Agriculture to fund his research on the corn fiber
process.

 In the name of AFEX, Stuart sued the professors and TAMUS alleging breach of contract,
misappropriation of trade secrets, and deprivation of intellectual property without due process of law. (2) By
way of injunction, AFEX initially sought to prevent Holtzapple and Davison from publishing the results of
their post-AFEX work. After a hearing, the trial court concluded that their lime treatment process was not
encompassed by the terms "AFEX Technologies" and "Confidential Information" as set forth in the 1992
agreement and denied AFEX's application for a temporary injunction. The professors then moved for
summary judgment, asserting the affirmative defense of official immunity.

 The district court granted summary judgment for the professors on the deprivation, or
"taking," claim and denied summary judgment as to the other claims. This appeal concerns only whether
the professors established, as a matter of law, that they were entitled to official immunity for the damage
claims against them in their individual capacities for breach of contract and misappropriation of trade
secrets. (3)
 See Tex. Civ. Prac. & Rem. Code § 51.014(5) (West 1997).


DISCUSSION


 In their only point of error, the professors contend the trial court erred in denying their
motion for summary judgment based on the affirmative defense of official immunity. In reviewing a
summary judgment, this Court considers the evidence in the light most favorable to the nonmovant and
resolves any doubt in the nonmovant's favor. Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d
472, 477 (Tex. 1995); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 
Official immunity is an affirmative defense. City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.
1994). A defendant moving for summary judgment on an affirmative defense must plead and conclusively
prove each element of the defense. Kassen v. Hatley, 887 S.W.2d 4, 8-9 (Tex. 1994); Roark v.
Stallworth Oil & Gas Inc., 813 S.W.2d 492, 495 (Tex. 1991).

 Government employees are entitled to official immunity from suit arising from the
performance of their (1) discretionary duties (2) done in good faith (3) within the scope of their authority. 
City of Lancaster, 883 S.W.2d at 653. "Official immunity" is one of several interchangeable terms,
including "quasi-judicial immunity," "qualified immunity," and "good-faith immunity," describing an
affirmative defense for governmental employees sued in their individual capacities. Harrison v. Texas
Dep't of Criminal Justice-Institutional Div., 915 S.W.2d 882, 888 (Tex. App--Houston [1st Dist.]
1995, no writ); see Travis v. City of Mesquite, 830 S.W.2d 94, 100-01 n.2 (Tex. 1992) (Cornyn, J.,
concurring). While this defense has traditionally been applied to provide immunity from tort damages for
official acts, it has also been applied to immunize state officials from suit and liability for alleged
misinterpretation or breach of an agreement. See Koerselman v. Rhynard, 875 S.W.2d 347, 353 (Tex.
App.--Corpus Christi 1994, no writ).



(i) Breach of Contract Claims against Holtzapple and Davison

 In its petition, AFEX asserted that Holtzapple and Davison breached the terms of the 1992
agreement by utilizing "AFEX technologies" in the development of the lime pretreatment process. 
Holtzapple and Davison assert that, as university professors, they acted within the scope of their authority
when they signed the 1992 agreement; therefore, their only contractual obligation was in their capacity as
TAMUS employees allowing them to assert official immunity as a defense to AFEX's contractual claims
against them. We disagree. The summary judgment evidence fails to demonstrate conclusively that
Holtzapple and Davison were acting solely in their capacities as TAMUS employees when they signed the
1992 agreement. To the contrary, our review of the summary judgment evidence reveals that Holtzapple
and Davison each signed the agreement "individually and as an employee of TAMUS." Thus, Holtzapple
and Davison signed the 1992 agreement as individuals, at least in part, and sought to benefit from the
agreement as individuals. Throughout the agreement, references are made to Holtzapple and Davison
individually, regarding individual benefits derived from the contract. For example, in section 2.01 of the
agreement, TAMUS and the professors acknowledge the "release and assignment to Holtzapple and
Davison of any and all rights it may have in U.S. Patent Application No. 07/487,531." In turn, in Section
2.03, Holtzapple and Davison individually assign certain rights to AFEX. Moreover, throughout the
contract the two were treated and referred to separately and distinctly from TAMUS. In section 3.04 of
the agreement, the corporation agrees to pay Holtzapple and Davison a consulting fee for their work
performed on behalf of the corporation up to the date of the agreement; in section 8.05 Stuart, CSURF,
and AFEX agree to release TAMUS, Holtzapple, and Davison from liability arising out of work performed
prior to the effective date of the agreement. The contract unquestionably bound Holtzapple and Davison
in their individual capacities.

 Allowing Holtzapple and Davison to assert official immunity in this context would deviate
from the policy behind the implementation of official immunity. As the supreme court explained in Kassen
v. Hatley, 887 S.W.2d 4 (Tex. 1994):


 The purpose of official immunity is to insulate the functioning of government from the
harassment of litigation, not to protect erring officials. The public would suffer if
government officers, who must exercise judgment and discretion in their jobs, were subject
to civil lawsuits that second-guessed their decisions.  Official immunity increases the
efficiency of employees because they need not spend time defending frivolous charges.



Id. at 8 (citations omitted). We believe the policy behind official immunity has no application when
government employees enter into private contractual obligations and in return receive private benefits or
the promise of such benefits. An individual should not be permitted to use his status as a government
employee to cloak himself with the defense of official immunity and thereby escape private contractual
duties entered into outside of his position as a government employee.

 Based on a review of the agreement, we conclude that the summary judgment evidence fails
to demonstrate conclusively that Holtzapple and Davison were acting solely in their capacity as TAMUS
employees when they signed the 1992 agreement. Therefore, we hold that their status as professors at
TAMUS does not release them from their individual contractual obligations when such obligations were
entered into, at least in part, outside their position as employees of TAMUS. Nor does the record contain
any evidence suggesting that Holtzapple and Davison were required by TAMUS to perform the acts that
are now at issue. The trial court therefore did not err in denying summary judgment as to the breach of
contract claims leveled against Holtzapple and Davison in their individual capacities.


(ii) Misappropriation of Trade Secrets Claim Against Holtzapple, Davison, and Dale

 Misappropriation of trade secrets is shown by proof that: (1) a trade secret existed; (2) the
trade secret was acquired through a confidential relationship; and (3) the defendant used the trade secret
without authorization. GeoChem Tech Corp. v. Verseckes, 929 S.W.2d 85, 91 (Tex. App.--Eastland
1996, writ requested). We conclude that the trial court did not err in denying summary judgment as to the
common law claim of misappropriation of trade secrets asserted by AFEX, because the summary judgment
evidence does not conclusively establish that the professors acted in good faith. In City of Lancaster v.
Chambers, 883 S.W.2d 650 (Tex. 1994), the supreme court adopted a good-faith test consisting of
"objective legal reasonableness." Id. at 656. This standard generally applies in all official immunity cases. 
Murillo v. Garza, 881 S.W.2d 199, 202 (Tex. App.--San Antonio 1994, no writ). To be entitled to
summary judgment on the basis of official immunity, a defendant must conclusively establish that a
reasonably prudent person in the same or similar circumstances "could have believed" his actions to be
lawful and reasonable. Wadewitz v. Montgomery, 40 Tex. Sup. Ct. J. 894, 895-96 (July 9, 1997); City
of Lancaster, 883 S.W.2d at 656-57. (4) Using the foregoing test, the summary judgment evidence in this
case does not conclusively establish that the professors acted in good faith in regard to AFEX's common-law claim of misappropriation of trade secrets.

 Good faith can be established conclusively by summary judgment evidence that states the
underlying facts and relates an objective conclusion, using words similar to those of the Chambers test. 
See, e.g., Gallia v. Schreiber, 907 S.W.2d 864, 869-70 (Tex. App.--Houston [1st Dist.] 1995, no writ);
Texas Dep't of Public Safety v. Perez, 905 S.W.2d 695, 700 (Tex. App.--Houston [14th Dist.] 1995,
writ denied). We do not suggest that summary judgment evidence can never be sufficient unless it contains
the "magic words" of the Chambers test. The evidence need only show that, by applying an "objective"
approach, a reasonably prudent professor could have believed his research did not violate any
confidentiality agreements or understandings. However, self-serving conclusions that fail to demonstrate
an objective approach are insufficient to warrant summary judgment. See, e.g., Wadewitz, 40 Tex. Sup.
Ct. J. at 896; Cameron County v. Alvarado, 900 S.W.2d 874, 880-81 (Tex. App.--Corpus Christi
1995, writ dism'd w.o.j.). The supreme court acknowledged in City of Lancaster that the test for good
faith, combined with general Texas summary judgment law, creates substantial hurdles for the movant
before immunity issues can be resolved at the summary judgment stage. See City of Lancaster, 883
S.W.2d at 657.

 In the present case, the only summary judgment evidence on the issue of good faith is
contained in affidavits from each of the professors describing their involvement with AFEX and the manner
in which they conducted the acts of which AFEX complains. Each of the professors' affidavits makes the
same statement: "I have, without exception, acted in good faith in all dealings in which AFEX has been
involved." (5) This is merely a subjective statement of good faith, and is insufficient to conclusively establish
good faith under the Chambers test. See id. We conclude that the summary judgment evidence does not
establish conclusively that the professors' actions were reasonable based on an objective standard of what
a reasonably prudent professor could have believed under the same or similar circumstances.

 Furthermore, while good faith may sometimes be established conclusively through the
testimony of a party or other interested witness, (6) such testimony must be clear, positive, and direct,
otherwise credible, free from contradictions and inconsistencies, and readily controvertible. See Tex. R.
Civ. P. 166a(c); Rhodes v. Torres, 901 S.W.2d 794, 798-800 (Tex. App.--Houston [14th Dist.] 1995,
no writ). Subjective self-serving statements regarding good faith are not readily controvertible and will not
support summary judgment. See Tex. R. Civ. P. 166a(c); Font v. Carr, 867 S.W.2d 873, 879 (Tex.
App.--Houston [1st Dist.] 1993, no writ). We conclude the trial court did not err in denying the
professors' motion for summary judgment as to AFEX's claim of misappropriation of trade secrets. We
overrule point of error one. (7)





CONCLUSION

 Having overruled appellants' sole point of error, we affirm the trial court's judgment.



 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and B. A. Smith

Affirmed

Filed: August 28, 1997

Do Not Publish
1. Appellants perfected their appeal by filing a single notice of appeal, in which TAMUS as well
as the three professors were named as the appealing parties. However, because TAMUS's motion for
summary judgment was not based on a claim of official immunity on the part of the professors, section
51.014(5) of the Civil Practice and Remedies Code does not permit an interlocutory appeal by TAMUS
from a denial of its motion. The Office of the Attorney General, as counsel for the professors, concedes
that TAMUS is not a proper party to this appeal. Accordingly, we dismiss TAMUS as an appellant.
2. Specifically, AFEX initially sued Holtzapple and Davison in their individual and official capacities
for breach of contract and misappropriation of trade secrets. AFEX later sued Dale in both his official and
individual capacities for misappropriation of trade secrets and, as best we can tell, only in his official
capacity for breach of contract. The claim for deprivation of intellectual property was brought against the
professors only in their official capacities.
3. When State employees are sued in their official capacities for acts performed within the scope
of their authority, the suit is one against the State. Director of the Dep't of Agriculture and Environment
v. Printing Indus. Ass'n, 600 S.W.2d 264, 266 (Tex. 1980). Thus, any judgment in such a suit is
collectible only against the governmental entity, not against the official's personal assets. See Kentucky
v. Graham, 473 U.S. 159, 166 (1985); Harris Cty. v. Walsweer, 930 S.W.2d 659, 665 (Tex.
App.--Houston [1st Dist.] 1996, writ requested). Therefore, the damage claims against the professors
in their official capacities are not included in this appeal. See Tex. Civ. Prac. & Rem. Code § 51.014(5);
City of Houston v. Kilburn, 849 S.W.2d 810, 812 (Tex. 1993); City of Mission v. Ramirez, 865
S.W.2d 579, 582 (Tex. App.--Corpus Christi 1993, no writ); see also Reyna v. City of Weslaco, 944
S.W.2d 657, 661-62 (Tex. App.--Corpus Christi 1997, no writ) (official immunity is available only to
officials sued in their individual capacities).

4. Despite the similarity in language between the Chambers good-faith test and the general
negligence test, no equivalence should be implied. See City of Lancaster, 883 S.W.2d at 656 n.5.
5. Although Professor Dale's affidavit states, "I have, without exception, acted in good faith in all
dealings I have had with AFEX," that slight variation is not material.
6. See, e.g., Barker v. City of Galveston, 907 S.W.2d 879, 888 (Tex. App.--Houston [1st Dist.]
1995, writ denied); City of Hempstead v. Kmiec, 902 S.W.2d 118, 121 (Tex. App.--Houston [1st Dist.]
1995, no writ).
7. In light of this disposition, we need not address AFEX's argument that the professors are
estopped from asserting official immunity.



ly that the professors' actions were reasonable based on an objective standard of what
a reasonably prudent professor could have believed under the same or similar circumstances.

 Furthermore, while good faith may sometimes be established conclusively through the
testimony of a party or other interested witness, (6) such testimony must be clear, positive, and direct,
otherwise credible, free from contradictions and inconsistencies, and readily controvertible. See Tex. R.
Civ. P. 166a(c); Rhodes v. Torres, 901 S.W.2d 794, 798-800 (Tex. App.--Houston [14th Dist.] 1995,
no writ). Subjective self-serving statements regarding good faith are not readily controvertible and will not
support summary judgment. See Tex. R. Civ. P. 166a(c); Font v. Carr, 867 S.W.2d 873, 879 (Tex.
App.--Houston [1st Dist.] 1993, no writ). We conclude the trial court did not err in denying the
professors' motion for summary judgment as to AFEX's claim of misappropriation of trade secrets. We
overrule point of error one. (7)





CONCLUSION

 Having overruled appellants' sole point of error, we affirm the trial court's judgment.



 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and B. A. Smith

Affirmed

Filed: August 28, 1997

Do Not Publish
1. Appellants perfected their appeal by filing a single notice of appeal, in which TAMUS as well
as the three professors were named as the appealing parties. However, because TAMUS's motion for
summary judgment was not based on a claim of official immunity on the part of the professors, section
51.014(5) of the Civil Practice and Remedies Code does not permit an interlocutory appeal by TAMUS
from a denial of its motion. The Office of the Attorney General, as counsel for the professors, concedes
that TAMUS is not a proper party to this appeal. Accordingly, we dismiss TAMUS as an appellant.
2. Specifically, AFEX initially sued Holtzapple and Davison in their individual and official capacities
for breach of contract and misappropriation of trade secrets. AFEX later sued Dale in both his official and
individual capacities for misappropriation of trade secrets and, as best we can tell, only in his official
capacity for breach of contract. The claim for deprivation of intellectual property was brought against the
professors only in their official capacities.
3. When State employees are sued in their official capacities for acts performed within the scope
of their authority, the suit is one against the State. Director of the Dep't of Agriculture and Environment
v. Printing Indus. Ass'n, 600 S.W.2d 264, 266 (Tex. 1980). Thus, any judgment in such a suit is
collectible only against the governmental entity, not